IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KENDRA M. MORRIS,           )
     Plaintiff,                )
                             )
         v.                 )     Civil No. 3:16cv587 (MHL)
                             )
NANCY A. BERRYHILL[1],      )
Acting Commissioner of Social Security,  )
     Defendant.             )
_____)

## REPORT AND RECOMMENDATION

On July 11, 2012, Kendra M. Morris ("Plaintiff") applied for Supplemental Security

Income ("SSI") under the Social Security Act ("Act"), alleging disability from a learning

disability, anxiety and depression, with an alleged onset date of December 24, 2010. The Social

Security Administration ("SSA") denied Plaintiff's claims both initially and upon

reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a

written decision and the Appeals Council denied Plaintiff's request for review, rendering the

ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in: (1) finding that Plaintiff did not meet the requirements of Listing

12.05(C); (2) failing to include Plaintiff's various moderate limitations in the residual functional

capacity ("RFC") or hypothetical question posed to the vocational expert ("VE"); (3) failing to

account for Plaintiff's moderate difficulties with concentration, persistence and pace; and, (4)

---

[1]    On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security. Pursuant to Federal Rules of Civil Procedure 25(d), Nancy A. Berryhill should be
substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this matter.

crediting the VE's testimony after failing to provide the VE with a sufficient hypothetical. (Mem. of Point and Auths. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 14) at 4-19.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[2] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) and Motion to Remand (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed her first SSI application in September 2008, and the ALJ denied her claim on December 23, 2010. (R. at 81-92.) The Appeals Council denied Plaintiff's request for review, and Plaintiff did not file a civil action, rendering the ALJ's decision in that case final. (R. at 14, 96-100.) On July 11, 2012, Plaintiff filed her current application for SSI, with an alleged onset date of December 24, 2010. (R. at 191-99, 206-08.) The SSA denied this claim initially on November 1, 2012, and again upon reconsideration on May 29, 2013. (R. at 101-11, 113-24.) At Plaintiff's written request, the same ALJ held a video hearing on October 30, 2014. (R. at 31-77, 92.) On February 5, 2015, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because she could perform jobs that exist in significant numbers in the national economy. (R. at 14-26.) On May

---

[2]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

27, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-5.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a)(4). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

## III.    THE ALJ'S DECISION

On October 30, 2014, the ALJ held a video hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 31-77.) On February 5, 2015, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 14-26.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 15-26.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of July 11, 2012. (R. at 16, 206-08.) At step two, the ALJ found that Plaintiff had the following severe impairments (at least in combination): (1) learning disorder; (2) anxiety disorder; and, (3) depression. (R. at 17.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of

4

impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-21.) In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform a full range of work at all exertional levels, but with the following nonexertional limitations: she could perform simple, repetitive, non-production rate work in a stable environment. (R. at 21.) At step four, the ALJ found that Plaintiff did not have any relevant past work. (R. at 25.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 25-26.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 26.)

## IV.    ANALYSIS

Plaintiff, twenty-nine years old at the time of this Report and Recommendation, has never held a job. (R. at 112, 210.) She applied for Social Security Benefits, alleging disability from a learning disability, depression and anxiety, with an alleged onset date of December 24, 2010. (R. at 101.) First, Plaintiff's appeal to this Court alleges that the ALJ erred by finding that Plaintiff did not meet the criteria for Listing 12.05(C). (Pl.'s Mem. at 4-13.) Second, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC by failing to incorporate certain moderate limitations into the RFC as well as the hypothetical question posed to the VE and by failing to properly account for her moderate difficulties with concentration, persistence and pace. (Pl.'s Mem. at 13-17.) Finally, Plaintiff argues that the ALJ erred by crediting testimony from the VE, which required Plaintiff to perform Reasoning Level 2 and Mathematical Development Level 1 jobs. (Pl.'s Mem. at 17-19.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ Did Not Err in Affording Weight to the Prior Decision Denying Plaintiff SSI.

The parties raise issues that implicate the ALJ's prior decision denying Plaintiff's first application for Social Security benefits. Plaintiff first argues that the ALJ erred by finding that

her intellectual functioning did not satisfy the criteria of Listing 12.05(C). (Pl.'s Mem. at 4.) Plaintiff alleges that *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999), does not preclude her from raising legal issues in a subsequent claim. (Pl.'s Mem. at 3.) Defendant responds that *Albright* precludes Plaintiff from raising this issue, because Listing 12.05 requires onset of a claimant's intellectual disability before age twenty-two, and Plaintiff was over twenty-two years old at the time of the prior decision. (Def.'s Mot. for Summ. J. and Br. in Supp. Summ. of the Arg. ("Def.'s Mem.") (ECF No. 15) at 15-16.) In the alternative, Defendant argues that substantial evidence supports the ALJ's decision that Plaintiff did not satisfy Listing 12.05(C). (Def.'s Mem. at 16-20.)

Next, Plaintiff argues that the ALJ erred in formulating the RFC by failing to include her various moderate limitations and failing to properly account for her moderate difficulties with concentration, persistence and pace. (Pl.'s Mem. at 13-17.) Defendant responds that the ALJ reviewed all the relevant medical evidence in formulating the RFC, and appropriately gave the highest weight to his prior decision in accordance with *Albright*. (Def.'s Mem. at 20-25.) Although the ALJ relied in part on his prior decision, and assessed Plaintiff with the same RFC as in her previous claim, Plaintiff curiously does not argue that the ALJ erred in the weight that he afforded to his prior decision. (Pl.'s Mem. at 13-17.) Because prior agency decisions can have a preclusive effect on subsequent claims, the Court must first address the ALJ's prior decision and its impact on Plaintiff's current application. *Albright*, 174 F.3d at 476 n.4 ("[T]o the extent that a second . . . application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion apply with full force.").

1. **The ALJ's prior finding that Plaintiff did not satisfy the criteria of Listing 12.05(C) precludes the Court from reviewing that determination in Plaintiff's subsequent claim.**

The principles of *res judicata* apply in Social Security disability cases when a claimant files a successive application that "seeks to relitigate a time period" for which the SSA had previously denied the claimant benefits. *Albright*, 174 F.3d at 476 n.4 (4th Cir. 1999); *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987). To the extent that a successive application alleges an *unadjudicated* period of disability, the SSA treats the subsequent application as its own claim. *Albright*, 174 F.3d at 476. However, an ALJ will not reconsider previous final findings or decisions in a successive application based on the same facts, issues or evidence already weighed in the earlier proceeding. 42 U.S.C. § 405(h); *Lively*, 820 F.2d at 1392; *see also Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016) (recognizing that *res judicata* applies to final administrative decisions but not to an ALJ's decision that the Appeals Council later vacated).

When assessing a subsequent disability claim of a previously unadjudicated period, an ALJ must consider the prior findings from a final decision as evidence and give them "appropriate weight in light of all relevant facts and circumstances." Acquiescence Ruling 00-1(4) on *Albright* (Interpreting *Lively*), 65 Fed. Reg. 1936-01, 1938 (Jan. 12, 2000) [hereinafter AR 00-1(4)]; *Monroe*, 826 F.3d at 187. In affording weight to a prior finding, the ALJ must consider relevant factors, including:

(1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition;

(2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and[,]

> (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

AR 00-1(4), 65 Fed. Reg. at 1938. The Fourth Circuit has explained that the passage of time between relevant periods has a significant impact on the weight that the ALJ evaluating a subsequent claim might give to a prior finding. *Albright*, 174 F.3d at 477 (explaining that a claimant's condition likely remained unchanged after two weeks, and thus warranted reliance on a prior decision, but where the relevant period exceeded three years, the prior final decision deserved less weight). Thus, when less time has passed between a prior final decision and the alleged onset date of a subsequent application, an ALJ will afford more weight to the earlier decision. *Id.* Notably, the ALJ must only consider and weigh the prior findings of a claimant's RFC or other findings required by the various steps in the sequential evaluation process. AR 00-1(4), 65 Fed. Reg. at 1938. For example, at step three in the sequential analysis, when the prior proceedings (that resulted in a final judgment) considered and rejected a claimant's argument that she satisfied one of the listed impairments, "*res judicata* prevents reappraisal of . . . the [SSA]'s [prior] finding . . . ." *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011).

Here, the ALJ rendered his first decision on December 23, 2010. (R. at 81-92.) The Appeals Council denied Plaintiff's request for review, and Plaintiff did not file a civil action, rendering the ALJ's decision final in that case. (R. at 96-100.) In Plaintiff's current claim, the ALJ properly considered his prior decision and afforded it the "highest weight" for the period immediately following its issuance. (R. at 14, 21.) However, the ALJ also considered the newly submitted evidence in Plaintiff's second application, and concluded that her condition had not materially worsened over time. (R. at 21-25.)

When Plaintiff submitted her current application for SSI, she alleged an onset date of December 24, 2010 — one day after the ALJ's prior decision. (R. at 191.) This short timeframe alone supports the ALJ's assignment of the highest weight to his previous decision. The likelihood that the severity of Plaintiff's condition had changed in one day is negligible. *Compare Albright*, 174 F.3d at 477 (having "barely discernible" confidence that a claimant's condition had not changed more than three years after a prior decision), *with Lively*, 820 F.2d at 1391-92 (reversing an ALJ's decision to ignore a previous finding when the relevant passage of time spanned only two weeks). Further, to the extent that facts on which the ALJ based his prior decision would not change with the passage of time, the Court will not reassess that prior decision.

Specifically, the prior decision precludes review of the ALJ's determination that Plaintiff did not meet the requirements of Listing 12.05(C). Plaintiff bears the burden of proving that she meets or medically equals a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof. *Sullivan v. Zebley*, 493 U.S. 521, 532-34 (1990). "For a claimant to show that h[er] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530.

Plaintiff's condition must satisfy all of the enumerated criteria in Listing 12.05(C) to qualify her as disabled. *Id.* at 530. To meet the requirements of 12.05(C), Plaintiff must first demonstrate that she has intellectual disability (formerly known as mental retardation). 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.05; AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 33 (5th ed. 2013) [hereinafter DSM-V]. Listing

12.05 defines intellectual disability as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." § 12.05. In addition, to establish the requisite level of severity, Listing 12.05(C) requires Plaintiff to show "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." § 12.05(C).

To establish disability under Listing 12.05(C), therefore, Plaintiff had to show that she suffered from intellectual disability before age twenty-two. At the time of the ALJ's prior decision, Plaintiff had already turned twenty-two years old. (R. at 90, 191.) That prior decision stands final for the time period that it adjudicated (ending on December 23, 2010, the date that the ALJ issued the decision), including and beyond the date when Plaintiff turned twenty-two. 42 U.S.C. 405(h); *Albright*, 174 F.3d at 476 n.4. Because Plaintiff had to establish that her intellectual disability existed before age twenty-two, and she failed to do so in her first application when she had already reached that age, the ALJ's prior decision has a preclusive effect on her current claim. *See Smith*, 457 F. App'x at 328 (holding that *res judicata* prevented judicial reappraisal of a previous, final determination by the SSA that the claimant did not meet or medically equal Listing 1.02).

Further, as the ALJ noted, the additional evidence that Plaintiff submitted in her current disability claim simply confirms the previous finding that she does not satisfy Listing 12.05(C). (R. at 17-20.) No physician or psychologist has diagnosed Plaintiff with intellectual disability. (R. at 737-39, 741-65, 772-73, 795-834.) In both adult function reports that Plaintiff completed after filing her current application, she indicated that her conditions have remained unchanged.

(R. at 218, 224, 247, 253.) Indeed, in her current application, Plaintiff stated that she "was not disabled prior to age 22." (R. at 191.)

Her academic record demonstrates that, while attending special education classes and utilizing an individualized education program ("IEP"), Plaintiff graduated from high school with a modified diploma. (R. at 274-305, 308.) In high school, she could read and comprehend at a fifth grade level, and she performed math at a third grade level. (R. at 276.) Despite alleging functional illiteracy (Pl.'s Mem. at 9), Plaintiff met the standardized testing requirements for eighth grade reading. (R. at 277.) Plaintiff's IEP also indicated good behavior and politeness towards her teachers and classmates. (R. at 344.) Further, Plaintiff's IEP reported that she got along well with her peers, had adequate social skills and obeyed authority. (R. at 276, 344.) According to the IEP, Plaintiff could work well independently and in group settings. (R. at 276.) Finally, Plaintiff indicated that she enjoyed cooking and that she might work in a fast food restaurant. (R. at 332.)

This additional evidence in the record from medical sources, Plaintiff, her mother, and her academic record confirms the unreviewable finding from the final decision in her previous claim — that Plaintiff did not establish that she met or medically equaled the criteria in Listing 12.05(C). Because the principles of *res judicata* prevent reassessment of the prior decision, the ALJ's finding that Plaintiff did not meet Listing 12.05(C) does not warrant remand.

### 2. The ALJ Did Not Err in Formulating the RFC by Failing to Include Several Moderate Limitations in Plaintiff's RFC or the Hypothetical Posed to the VE or by Failing to Properly Account for Plaintiff's Moderate Difficulties with Concentration, Persistence and Pace.

Plaintiff argues that the ALJ erred by failing to include the following moderate limitations in the RFC and, by extension, the hypothetical question posed to the VE:

(1) ability to complete a normal workday without interruptions from psychologically based

symptoms; (2) ability to perform at a consistent pace without an unreasonable number and length of rest periods; and, (3) ability to sustain an ordinary routine without supervision. (Pl.'s Mem. at 13-14.) Plaintiff also alleges that the RFC does not adequately address her moderate difficulties in concentration, persistence and pace. (Pl.'s Mem. at 15-17.) Defendant responds that the ALJ reviewed all of the relevant medical evidence in formulating the RFC. (Def.'s Mem. at 20-25.) Defendant further asserts that *Albright* and AR 00-1(4) require the agency to "consider as evidence any [prior] findings at a step in the sequential evaluation process," and here, the ALJ appropriately gave the highest weight to his prior decision. (Def.'s Mem. at 21.)

### a. The RFC and Hypothetical Posed to the VE.

After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical and mental limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b)-(d). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that have basis in the claimant's credible complaints. 20 C.F.R. § 404.1545(e). In making RFC determinations, the ALJ must consider all relevant medical evidence, and the court gives treating physician's opinions controlling weight if (1) medically acceptable clinical and laboratory diagnostic techniques support the opinions and (2) the opinions do not conflict with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2012). However, if clinical evidence does not support the physician's opinion or the opinion conflicts with other substantial evidence, the court will accord the opinion less weight. *Craig*, 76 F.3d at 590. The assessment must include a narrative discussion of how the

evidence supports each conclusion, citing specific medical facts and non-medical evidence, including daily activities and observations. SSR 96-8p, 1996 WL 374184 (July 2, 1996).

As previously explained, when the record includes a final decision from a claimant's previous application, the ALJ will not reconsider previous findings based on the same evidence already weighed in the earlier decision. 42 U.S.C. § 405(h); *Lively*, 820 F.2d at 1392. However, to the extent that the subsequent claim covers an unadjudicated period, the ALJ will treat the later claim as a separate claim and weigh the prior findings as evidence in the record. 42 U.S.C. § 405(h); *Albright*, 174 F.3d at 476; AR 00-1(4), Fed. Reg. at 1938. Courts apply the substantial evidence test in reviewing the weight assigned to prior findings. *Albright*, 174 F.3d at 477-78.

Here, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she could perform simple, repetitive, non-production rate work in a stable environment. (R. at 21). The ALJ noted that he had previously found Plaintiff not disabled on December 23, 2010, and at that time Plaintiff had the same RFC. (R. at 21). The ALJ found *Albright* and AR 00-1(4) applicable. (R. at 21.) In her current application, Plaintiff alleges an onset date of December 24, 2010, just one day after the ALJ's previous decision. (R. at 14, 92, 191.) As previously discussed, an ALJ may give greater weight to prior findings that exist closer in time to a subsequent claim. *Albright*, 174 F.3d at 477-78; AR 00-1(4). Because Plaintiff alleged an onset date one day after the prior decision, and her condition had not materially worsened, the ALJ properly gave greatest weight to his previous decision, satisfying *Albright* and AR 00-1(4). (R. at 21.)

Substantial evidence supports the ALJ's decision that Plaintiff's RFC and disability had not changed since her previous claim. Plaintiff's function and disability reports, the medical opinions of the consultative examiners and the state agency examiners, as well as objective

medical evidence from Plaintiff's treating physicians bolster the ALJ's determination.

First, Plaintiff stated in her adult function report that her condition had always remained the same. (R. at 218.) In Plaintiff's November 27, 2012 disability report, she again stated that her condition had not changed. (R. at 238-41.) Plaintiff's mother also stated that Plaintiff has had the same condition since age five. (R. at 226, 228.)

Likewise, the findings of the consultative examiners confirmed that Plaintiff's condition remained unchanged. In Plaintiff's prior claim, on May 13, 2009, consultative psychologist Frank Russell, Ph.D., administered a comprehensive mental status evaluation and a Wechsler Adult Intelligence Scale-IV ("WAIS-IV")[3] test. (R. at 733-39.) The ALJ had considered Dr. Russell's opinion in his prior decision. (R. at 89-90.) Dr. Russell noted that Plaintiff had fair immediate auditory memory, fair recent memory, good remote memory and a fair fund of information. (R. at 736.) Although Dr. Russell found that Plaintiff had poor calculation ability, he also found that Plaintiff could do very simple math problems and count. (R. at 736.) He opined that Plaintiff could perform simple and repetitive tasks, but not detailed and complex ones. (R. at 738.) Dr. Russell noted that she could maintain regular attendance in the workplace and perform learned and instructed work activities on a regular basis. (R. at 738.) Further, Dr. Russell opined that Plaintiff could accept instructions from a supervisor and interact with her co-workers and the public effectively. (R. at 738.) Dr. Russell also determined that Plaintiff did not meet the criteria for mental retardation as specified in the DSM-IV and found that she could fulfill her daily activities, conceptualize comparable to other individuals her age and perform age-appropriate activities. (R. at 738.)

---

[3] The WAIS-IV comprises a test of general intelligence that the SSA considers when evaluating claims of intellectual disability. Programs Operations Manual System § DI 24515.055(A).

The consultative examiner in Plaintiff's current claim made similar findings to Dr. Russell. On October 29, 2012, consultative psychologist Christopher Cousins, Ph.D., assessed Plaintiff in a mental status evaluation and, like Dr. Russell, found that she could perform simple and repetitive tasks. (R. at 768-73.) Although Dr. Cousins also determined that Plaintiff had poor calculation ability, she could balance a checkbook. (R. at 771.) Dr. Cousins noted that Plaintiff had good abstract thinking ability, good recent and remote memory, orientation to person, time and place, as well as fair judgment and common sense reasoning. (R. at 771.) Dr. Cousins also opined that Plaintiff could perform simple tasks independently once learned and accept instruction from supervisors. (R. at 773.) Like Dr. Russell three years before, Dr. Cousins did not diagnose Plaintiff with intellectual impairment. (R. at 738, 772.) Comparing Dr. Cousins' opinion to Dr. Russell's confirms that, as the ALJ noted, the consultative examiners' opinions did not substantially change from Plaintiff's prior claim. (R. at 19, 24.)

Additionally, the state agency opinions lend support to the ALJ's conclusion that Plaintiff's condition had not materially worsened to justify changing her RFC. (R. at 101-10, 113-24.) During the initial review of Plaintiff's current claim, Stephen P. Saxby, Ph.D., reviewed the medical evidence and found that she could perform simple, repetitive tasks. (R. at 101-10.) Dr. Saxby found that Plaintiff could remember and carry out short and simple instructions, but she had marked limitations with detailed instructions. (R. at 108.) Dr. Saxby noted that she could work in coordination with (or proximity to) others without distraction and make simple, work-related decisions. (R. at 107-08.) He opined that Plaintiff could perform activities within a schedule and maintain regular attendance in the workplace and punctuality within customary tolerances. (R. at 108.) Finally, Dr. Saxby found that Plaintiff could get along with co-workers and maintain socially appropriate behavior. (R. at 108.) Dr. Saxby's opinion

comports with those of the consultative examiners and ultimately the RFC fashioned by the ALJ.

On reconsideration, Hillery Lake, M.D., made similar findings to Dr. Saxby. (R. at 113-24.) Although Dr. Lake opined that Plaintiff could only perform simple one- to two-step tasks, Dr. Lake also found, like Dr. Saxby, that Plaintiff could perform activities within a schedule and maintain regular attendance and punctuality within customary tolerances. (R. at 121.) Dr. Lake found that Plaintiff could understand and remember short and simple instructions, but she had marked limitations with detailed instructions. (R. at 121.) Further, Dr. Lake opined that Plaintiff could interact appropriately with the public and get along with her peers. (R. at 122.) Dr. Lake noted that Dr. Russell's opinion related to Plaintiff's previous claim, but found that it still "appear[ed] consistent with [Plaintiff's] overall functioning." (R. at 121.) Dr. Lake explained that, although Plaintiff had some moderate limitations, the severity of her limitations would not keep her from working. (R. at 124.) Both Dr. Saxby and Dr. Lake acknowledged the ALJ's prior decision as well as the applicability of AR 00-1(4) and *Albright*, and Dr. Lake further noted that Plaintiff reported no new conditions nor changes to her conditions. (R. at 104-05, 110, 114, 118, 124.) These state agency opinions support the RFC and the ALJ's determination that Plaintiff's condition had not worsened since his prior decision.

Objective medical evidence in the record further supports the RFC. In November 2010, Southside Community Services ("Southside") began treating Plaintiff for anxiety and depression. (R. at 746-65.) The medical records from Plaintiff's treating physician, Syng Seo, M.D., support the ALJ's conclusion that her condition had not worsened since her previous claim. (R. at 788, 802, 806.) On June 13, 2012, Plaintiff reported frequent panic attacks, but she had not taken her medication. (R. at 764.) On December 14, 2012, Plaintiff reported that she felt fine on medication, and Dr. Seo noted her calm, relaxed demeanor and full, oriented affect. (R. 779.)

On March 4, 2013, Plaintiff reported to Dr. Seo that she felt well and wanted to return to work. (R. at 788.) Dr. Seo noted that Plaintiff had a stable mood and slept well at night. (R. at 788.) Again, on May 24, 2013, Plaintiff made no complaint to Dr. Seo, saying that she felt fine and stable. (R. at 806.) Plaintiff also reported sleeping well at night and babysitting during the day. (R. at 806.) Dr. Seo found Plaintiff calm and relaxed with normal mood and clear thoughts. (R. at 806.) Thus, the record demonstrates that Plaintiff's anxiety and depression remained treated by her doctors and largely controlled by medication since the unfavorable decision in her prior claim.

The testimony from treating physician, Manjit Vohra, M.D., corroborates Dr. Seo's opinion that Plaintiff's anxiety and depression remained stable with medication. (R. at 809-20, 828-34.) On August 29, 2013, Plaintiff reported that her anxiety and depression had improved but still bothered her. (R. at 809.) Dr. Vohra adjusted her medications and instructed her to start taking Lexapro after breakfast each morning. (R. at 809.) On November 20, 2013, Plaintiff told Dr. Vohra that she had experienced suicidal ideations (with no plan to act on them), and that she never took Lexapro as prescribed, because she did not eat breakfast. (R. at 812.) Dr. Vohra planned to taper Plaintiff off of Zoloft, and instructed her to take the Lexapro with lunch instead. (R. at 812.) On December 13, 2013, Dr. Vohra noted Plaintiff's stability after she complied and switched to Lexapro. (R. at 815.)

In 2014, Dr. Vohra's treatment notes remained unremarkable. On March 18, 2014, Dr. Vohra made some dosage increases, but overall he found Plaintiff's conditions "much better." (R. at 818-19.) Dr. Vohra also found Plaintiff cooperative, alert and oriented with appropriate affect as well as fair judgment and insight. (R. at 819.) On April 22, 2014, Dr. Vohra noted that Plaintiff responded well to Lexapro, though he decreased her Seroquel dosage. (R. at 828.)

During her last appointment with Dr. Vohra on July 15, 2014, Plaintiff reported feeling depressed and anxious after breaking up with her boyfriend. (R. at 832.) However, she also told Dr. Vohra that she discussed things with her counselor, handled everything well and felt stable. (R. at 832.) Dr. Vohra made no changes to her medication, finding her cooperative and mildly depressed with linear, goal-directed thought process. (R. at 832.) These medical records demonstrate Plaintiff's ongoing treatment for depression and anxiety. They do not, however, establish that her condition had materially worsened since the prior unfavorable decision such that the ALJ needed to further limit her RFC.

In sum, Plaintiff's functional and disability reports, the functional report of Plaintiff's mother, the consultative opinions of Dr. Cousins and Dr. Russell, the opinions of the state agency examiners and the objective medical evidence from Dr. Seo and Dr. Vohra all support the ALJ's decision that Plaintiff's condition did not worsen since her previous denial of benefits. Thus, the ALJ did not err in his RFC assessment, which formed the basis for the hypothetical question posed to the VE.

### b. Plaintiff's Moderate Difficulties with Concentration, Persistence and Pace.

Plaintiff also alleges that the ALJ insufficiently accounted for her moderate difficulties with concentration, persistence and pace by limiting her to simple, repetitive tasks. (Pl.'s Mem. at 17.) Because *Mascio* rejected an equivalency between the ability to perform simple tasks and the ability to stay on task, Plaintiff asserts that the ALJ committed a reversible error. (Pl.'s Mem. at 17.) Defendant distinguishes this case from *Mascio* by noting that the ALJ, here, included limitations related to Plaintiff's mental impairments and explained why those restrictions did not change the RFC assessment. (Def.'s Mem. at 24.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f). The Commissioner can carry her burden in the final step with the testimony of a VE. 20 C.F.R. §§ 404.1566(e), 416.966(e). During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). When the hypothetical posed represents all of the claimant's substantiated impairments, the testimony of the VE "[is] relevant [and] helpful." *Walker*, 889 F.2d at 50.

In *Mascio*, the Fourth Circuit recognized that a hypothetical presented to a VE fails if the ALJ does not account for a relevant factor when determining Plaintiff's RFC. 780 F.3d at 638. The hypothetical question presented to the VE in *Mascio* failed to address the plaintiff's mental limitation, even though the ALJ found that the plaintiff had moderate difficulties in maintaining concentration, persistence and pace. *Id.* at 638. Further, the Fourth Circuit held that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation . . . account[s] for a claimant's limitation in concentration, persistence, or pace." *Id.* Thus, the Fourth Circuit remanded the case, because the ALJ failed to address a relevant factor in claimant's RFC. *Id.*

An ALJ satisfies *Mascio* by "providing a detailed discussion of Plaintiff's capacity for concentration, persistence, or pace." *See Thomas v. Colvin*, 2016 WL 1070826, at *4 (E.D. Va. Mar. 16, 2016) (finding *Mascio* satisfied because substantial evidence supported the RFC, and finding no inconsistency in the ALJ's assessment of the plaintiff's concentration, persistence or

pace limitations). Multiple district courts in the Fourth Circuit have held that the ALJ's RFC assessment satisfies *Mascio* as long as it provides a detailed discussion of the plaintiff's capacity for concentration, persistence or pace. *See Sizemore v. Colvin*, 2016 WL 483140, at *3 (W.D.N.C. Feb. 5, 2016) (holding that the ALJ satisfied *Mascio* because he specifically explained how the plaintiff's limitations translated into work limitations); *Mitchell v. Colvin*, 2015 WL 5690899, at *5-7 (W.D. Va. Sept. 28, 2015) (distinguishing *Mascio*, because the ALJ relied on medical evidence to support his conclusion and did not summarily conclude that a limitation of simple, unskilled work accounted for the plaintiff's moderate impairment in concentration, persistence and pace); *St. Clair v. Colvin*, 2015 WL 5310777, at *6 (W.D. Va. Sept. 11, 2015) (an RFC assessment relying on medical opinion evidence that the plaintiff could "perform simple and repetitive tasks and maintain regular attendance in the work place," despite having moderate impairment in concentration, satisfied *Mascio*).

These cases establish that *Mascio* did not create a *per se* rule that a plaintiff's moderate impairment in concentration, persistence or pace always translates into an RFC limitation. *Mitchell*, 2015 WL 5690899, at *7. Rather, *Mascio* highlighted the ALJ's duty to review the evidence and explain his decision when the claimant has moderate limitations in concentration, persistence or pace. *Id.*

In *Linares v. Colvin*, the plaintiff also had moderate limitations with concentration, persistence and pace. 2015 WL 4389533, at *2-*3 (W.D.N.C. July 17, 2015). To account for these nonexertional limitations, the ALJ limited the plaintiff to "simple, repetitive, routine tasks in a stable work in environment at a nonproduction pace with only occasional public contact." *Id.* at *3. The court distinguished *Mascio*, where the ALJ had merely limited the plaintiff to "simple, routine tasks or unskilled work." *Id.* at *4 (quoting *Mascio*, 780 F.3d at 638). Instead,

the court held that the ALJ in *Linares* went further, accounting for the plaintiff's limitation in pace by restricting her to non-production work, and accounting for her limitations in concentration and persistence by restricting her to a stable work environment with only occasional public contact. *Linares*, 2015 WL 4389533, at *4. Other courts in the Fourth Circuit have similarly held that limiting a claimant to non-production work adequately accounts for moderate limitations with concentration, persistence or pace. *See Eastwood v. Colvin*, 2016 WL 805709, at *4 (E.D. Va. Feb. 12, 2016) (holding that the ALJ accounted for the plaintiff's limitations in concentration, persistence and pace by limiting her to (1) few workplace changes, (2) little independent decision-making and (3) less than an assembly line pace); *Massey v. Colvin*, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (distinguishing *Mascio* because the ALJ's hypothetical limited the plaintiff's exposure to noise; contact with the public, co-workers and supervisors; changes in his work environment; and, his production pace); *see also Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that restricting a claimant to no high production goals adequately captured the claimant's moderate difficulties with concentration, persistence and pace); *Robinson v. Comm'r of Soc. Sec.*, 2014 WL 4145339, at *10 (E.D. Mich. Aug. 20, 2014) (holding that limiting a claimant to simple, routine, repetitive tasks with no fast-paced production requirements sufficiently accounted for the same moderate difficulties).

Here, the ALJ limited Plaintiff to simple, repetitive, non-production rate work in a stable environment. (R. at 21.) Like the ALJ in *Linares*, the ALJ here properly accounted for Plaintiff's difficulty with pace by limiting her to non-production rate work. (R. at 21.) By restricting Plaintiff to simple, repetitive tasks in a stable work environment, the ALJ also adequately accounted for her moderate difficulties with concentration and persistence. (R. at 21.) Indeed, the ALJ noted that a high-stress work setting could aggravate Plaintiff's mental

conditions. (R. at 23.) Like the ALJ in *Linares*, the ALJ here limited Plaintiff to simple, repetitive, non-production rate work in a stable environment. (R. at 21, 70-71.) Restricting Plaintiff to "non-production work" accounted for her difficulty in pace, while limiting her to simple, repetitive tasks in a stable work environment accounted for her difficulties in persistence and concentration.

The previously discussed medical opinions in the record show that the RFC assessment adequately addressed Plaintiff's moderate limitations in concentration, persistence or pace. Dr. Cousins opined that Plaintiff could perform simple, repetitive tasks, despite mild-to-moderate difficulty performing work activities on a consistent basis and completing a normal workday or workweek without interruptions. (R. at 773.) Further, Dr. Russell found no psychiatric reason that Plaintiff could not maintain regular attendance in the workplace or perform well-learned and instructed work activities on a consistent basis. (R. at 738.) Dr. Lake and Dr. Saxby also opined that Plaintiff's moderate limitations in concentration and persistence did not prevent her from working. (R. at 108, 110, 121-22, 124.)

Because the ALJ restricted Plaintiff to simple, repetitive, non-production rate work in a stable environment, he properly accounted for her moderate difficulties in concentration, persistence and pace, consistent with *Mascio*. The medical opinions of the consultative examiners and the state agency consultants support the RFC assessment in light of Plaintiff's moderate limitations. Because substantial evidence supports the RFC, and the ALJ offered an explanation for his decision, *Mascio* does not dictate remand in this instance.

**B. The ALJ Did Not Err in Crediting Testimony by the VE Regarding Plaintiff's Ability to Perform Reasoning Level 2 Jobs at a Mathematical Development Level 1.**

Finally, Plaintiff argues that the ALJ erred by relying on the VE's testimony that suggested jobs beyond Plaintiff's capacity. (Pl.'s Mem. at 17-19.) Plaintiff argues that she can only perform Reasoning Level 1 jobs, whereas all of the jobs that the VE identified required Reasoning Level 2 and Mathematical Development 1 skills. (Pl.'s Mem. at 18-19.) Defendant responds that limiting Plaintiff to simple, repetitive, non-production rate work comports with Reasoning Level 2 jobs, and the RFC and hypothetical appropriately limited Plaintiff to such tasks. (Def.'s Mem. at 26-28.)

At the fifth-step of the ALJ's sequential process to evaluate the disability claim, the ALJ considers the claimant's age, education, work experience and RFC to decide whether she can perform alternative work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). The Commissioner bears the burden to prove that the plaintiff can perform alternative work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The ALJ relies primarily on the Dictionary of Occupational Titles ("DOT") to decide whether sufficient work exists for the plaintiff in the national economy. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015); SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). However, the ALJ may also consult a VE "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice . . . ." *Pearson*, 810 F.3d at 207. Occupational evidence provided by the VE and occupational information supplied by the DOT must not contradict each other. *Id.* If an apparent conflict exists, the ALJ must find a reasonable explanation for the conflict before relying on VE testimony. *Pearson*, 810 F.3d at 208-10 (4th Cir. 2015); SSR 00-4p, at *4.

Here, Plaintiff argues that the ALJ erred by failing to limit her to jobs requiring Reasoning Level 1 skills, which involve no more than "simple one- or two-step instructions." (Pl.'s Mem. at 18.) Because Dr. Lake opined that Plaintiff could perform "simple 1-2 step tasks," Plaintiff asserts that the ALJ should have adopted that restriction and committed reversible error by accepting testimony from the VE that Plaintiff could perform work requiring a higher reasoning level. (Pl.'s Mem. at 17-18.) Instead, the ALJ limited Plaintiff to "simple, repetitive" work. (R. at 21.) Thus, Plaintiff essentially argues that the ALJ should have further limited her to simple one- to two-step instructions in the RFC. As the Court already held, substantial evidence in the record supports the RFC assessment. The Court now considers whether the jobs identified by the VE appropriately account for Plaintiff's limitations as described in the RFC.

The DOT defines Reasoning Level 1 jobs as the skills to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DICTIONARY OF OCCUPATIONAL TITLES, App'x C, 1991 WL 688702 (4th ed. 1991) [hereinafter DOT]. At the next increment, the DOT defines Reasoning Level 2 jobs as the skills to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[, and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

Before *Pearson*, this Court found that no apparent conflict existed between an RFC that limited the claimant to simple, routine, unskilled work and jobs with an SVP[4] of 2. *Marrow v.*

---

[4]     The DOJ defines the Specific Vocational Preparation Level ("SVP") as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and

*Colvin*, 2014 WL 4467271, at \*16-17 (E.D. Va. Sept. 10, 2014). Post-*Pearson*, other district courts in this Circuit have similarly found no apparent conflicts between a limitation to simple, routine tasks and jobs that required a Reasoning Level of 2. *See, e.g., Proctor v. Colvin*, 2016 WL 6822477, at \*9 (D. Md. Nov. 18, 2016) (finding Reasoning Level 2 consistent with simple, routine tasks) (additional citations omitted); *Gautreau v. Colvin*, 2016 WL 1314314, at \*11-12 (E.D. Va. Feb. 26, 2016) (affirming the ALJ's decision where the RFC limited the claimant to simple, routine tasks and the VE offered jobs with Reasoning Levels 1, 2 and 3). *But see Watson v. Colvin*, 2017 WL 694645, at \*3-5 (D.S.C. Feb. 22, 2017) (remanding for the ALJ to determine in the first instance whether VE testimony accounted for multiple mental limitations in the RFC and remained consistent with Reasoning Level 2 jobs in the DOT). By contrast, an apparent conflict would arise between an RFC restricting a claimant to one- to two-step instructions and Reasoning Level 2. *Henderson v. Colvin*, 643 F. App'x 273, 276-77 (4th Cir. 2016).

Here, the ALJ limited Plaintiff to simple, repetitive work that falls squarely within the skills required to perform Reasoning Level 2 jobs. The limitations of the RFC remain consistent with the detailed — yet uninvolved — instructions that Reasoning Level 2 positions follow. Substantial evidence supports the RFC, and the VE identified jobs that account for the limitations of the RFC, including cleaner (DOT No. 381.687-018 (medium work)), laundry worker (DOT No. 361.684-014 (medium work)), packer (DOT Nos. 920.587-018 (medium work)); 920.685-026 (light work)), and marker (DOT No. 209.587-034 (light work)) — all of which qualify as Reasoning Level 2 work. (R. at 26, 70-72.) The VE also testified that an individual of Plaintiff's age, education level and work experience who could perform simple, repetitive, non-production work in a stable environment could work as a cleaner at a light work

develop the facility needed for average performance in a specific job-worker situation. DOT, App'x C, 1991 WL 688702.

exertional level (DOT No. 323.687-014). (R. at 26, 71-72.) A light work cleaner requires only Reasoning Level 1. DOT No. 323.687-014. Thus, even if the ALJ had limited Plaintiff to one-to two-step instructions, he still identified work that exists in significant numbers in the national economy that she could perform.

The previously described medical opinions in the record support the determination that Plaintiff could perform Reasoning Level 2 work. Though Dr. Lake opined that Plaintiff could carry out one- to two-step tasks (equivalent to Reasoning Level 1), Drs. Russell, Cousins and Saxby all found that she could complete simple, repetitive or routine tasks (equivalent to Reasoning Level 2). (R. at 110, 121, 738, 773.) Moreover, in accord with the other physicians, Dr. Lake found Plaintiff "[n]ot significantly limited" in her ability to understand and remember short, simple instructions. (R. at 107, 121, 738, 773.) These opinions substantiate Plaintiff's ability to understand detailed *but uninvolved* instructions commensurate with Reasoning Level 2 work. Thus, substantial evidence supports the ALJ's decision to rely on the testimony of the VE to identify jobs in the national economy that Plaintiff could perform.

Further, the record does not support Plaintiff's assertion that she cannot work at Mathematical Development Level 1. Plaintiff argues that, because she could only complete very simple math problems but could not compute them orally, she does not have the skills that Mathematical Development Level 1 requires. (Pl.'s Mem. at 19.) This argument, too, lacks merit.

Mathematical Development Level 1 requires an individual to (1) add and subtract two-digit numbers; (2) multiply and divide 10's and 100's by 2, 3, 4 and 5; (3) perform the four basic arithmetic operations with coins as part of a dollar; and, (4) perform operations with units of measurement. DOT, App'x C, 1991 WL 688702. Of the six levels of math skills, Mathematical

Development Level 1 represents the least demanding level, and it does not require knowledge of ratios, percentages, geometry, algebra, statistics or other more advanced areas of mathematics that the other levels require in varying degrees. *Id.*

Although Plaintiff had poor calculation ability, her academic records show that she could count money and perform simple mathematic equations as well as multi-step problems with a calculator. (R. at 311, 736, 771.) In function reports, Plaintiff and her mother indicated that she could also count change and pay bills. (R. at 220, 231.) Plaintiff told Dr. Cousins that she knew how to balance a checkbook. (R. at 771.) This evidence in the record illustrates that, though limited, Plaintiff had the requisite skills to perform the minimal mathematical operations involved in Mathematical Development Level 1 work. Further, the ALJ acknowledged Plaintiff's academic records and confirmed with the VE that she performed math at a third grade level. (R. at 70.) The VE considered Plaintiff's educational background when identifying jobs that she could perform despite her limitations. (R. at 70-72.)

Finally, Plaintiff only cites Dr. Russell's opinion that she could not perform *oral* arithmetic problems to support her inability to satisfy Mathematical Developmental Level 1 requirements. (Pl.'s Mem. at 19.) That opinion alone does not overcome the other evidence in the record, as assessed by the ALJ. Nor does Mathematical Development Level 1 specify any requisite oral skills. *Compare* DOT, App'x C, 1991 WL 688702, Reasoning Levels 2, 3 and 4 (involving the ability to understand oral instructions), *with* Mathematical Development Level 1 (incorporating no oral component).

Because simple, repetitive tasks do not conflict with Reasoning Level 2 jobs, and substantial evidence in the record shows Plaintiff's capacity to complete such tasks and basic

math functions to perform at Mathematical Developmental Level 1, the ALJ did not err in crediting the testimony of the VE.

<h2 style="text-align:center">V. CONCLUSION</h2>

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) and Motion to Remand (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

<h2 style="text-align:center">NOTICE TO PARTIES</h2>

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: AUGUST 30, 2017